CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 19 2010

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KELVIN A. CANADA, ) | |
|     Plaintiff, ) | Civil Action No. 7:08cv219 |
| ) | |
| v. ) | REPORT AND RECOMMENDATION |
| ) | |
| TRACEY RAY, ) | By:   Michael F. Urbanski |
|     Defendant. ) |        United States Magistrate Judge |

Plaintiff Kelvin A. Canada, a Virginia inmate proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In an amended complaint submitted pursuant to court order, Canada alleges that Tracy Ray,[1] Warden of Red Onion Prison, violated his constitutional rights in several respects.

This matter is before the court pursuant to the Standing Order of Reference, dated May 26, 2006, and an Order, dated August 10, 2009, for consideration of Canada's compliance with the Federal Rules of Civil Procedure and 28 U.S.C. § 1915A(b)(1). Upon review, the undersigned **RECOMMENDS** that all of the claims in Canada's amended complaint, except for those regarding the impact of the prison's tuberculosis testing policy on Canada's religion, be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) as frivolous because the claims fail to raise any cognizable legal claim.

I.

On March 6, 2008, the Clerk's Office of the United States District Court for the Western District of Virginia received a complaint making a variety of unrelated claims. The complaint named seventeen individuals including the warden of Red Onion State Prison, Tracy Ray, as well as various doctors, dentists and security personnel.

---

[1] Plaintiff identifies the warden as Tracey Ray; the correct spelling of defendant's name is Tracy Ray.

The court, by order dated August 10, 2009, required Canada to submit an amended complaint setting forth a single matter consisting of claims against one defendant or claims related to the same event or series of events. On September 18, 2009, Canada submitted a motion to amend the complaint, setting forth the claims that Canada wished to bring against Ray. On September 22, 2009, the court granted the motion to amend.

Canada alleges that Warden Tracy Ray violated Canada's rights pursuant to 42 U.S.C. § 1983 in the following manners:

- Claim 1: by denying Canada the ability to order materials from the law library;

- Claim 2: by subjecting Canada to excessive fines;

- Claim 3: by keeping Canada in long-term segregation for minor infractions;

- Claim 4: by requiring Canada to take a tuberculosis test that allegedly contained pork or alcohol in violation of Canada's religion, even though alternative tests were available and for punishing Canada for refusing to take the test,

- Claim 5: by stopping Canada from receiving publications; and

- Claim 6: by denying Canada access to nude and or semi-nude photos of his "friends, girlfriends or wives."

On October 21, 2009, the court ordered Canada to submit additional materials regarding his allegations that he was punished for refusing to take a tuberculosis test, and that he was denied publications in contravention of the First Amendment.

Canada seeks $25,000 in compensatory damages, as well as $25,000 in punitive damages for every alleged constitutional violation. Canada additionally seeks a declaratory judgment as to each of the alleged violations except those regarding nude or semi-nude photos.

**II.**

28 U.S.C. § 1915A(b)(1) allows the court to identify and dismiss a complaint or portion of a complaint filed by a prisoner against a governmental officer or entity when the prisoner's claim "is frivolous, malicious, or fails to state a claim upon which relief may be granted. . . ."[2] "Legally frivolous claims are based on an 'indisputably meritless legal theory' and include 'claims of infringement of a legal interest which clearly does not exist.'" Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In reviewing prisoners' cases, it is not the role of the district court to interpret the complaint to state additional claims or to "supply an allegation of injury different from the injury specifically alleged by [the plaintiff]." Farabee v. Feix, 119 F. App'x 455, 458 n.2 (4th Cir. 2005). Though courts are to construe pro se cases liberally, "[d]istrict judges are not mind readers. Even in the case of pro se litigants, they cannot be expected to construct full blown claims from sentence fragments . . . ." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985); see also Long v. Horton, 865 F.2d 255 (4th Cir. 1988) (unpublished table decision) (district courts need not "construct" claims from "obscure references" and appellate courts should not consider those references on appeal).

Thus, in an early test of a complaint, a plaintiff must "allege enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Giarrantano v. Johnson, 521 F.3d 298 (4th Cir. 2008) (applying Twombly in motion to dismiss proceedings in § 1983 case).[3] Although a complaint "does not need detailed factual

---

[2]28 U.S.C. § 1915A was added to the code in 1996. It contains language nearly identical to 28 U.S.C. § 1915(d)(1988) and to 28 U.S.C. § 1915(e)(2), both of which provide for the screening of prisoner petitions filed in forma pauperis.

[3]Though the Memorandum Opinion directing Canada to file an amended complaint warned Canada against referencing his prior filings in this matter, his amended complaint contains little to no factual basis

3

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citations omitted); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). As set forth below, Canada has not set forth legal claims entitling him to relief. Accordingly, his amended complaint should be screened as frivolous.

### III.

*Claim 1*

First, Canada argues that his constitutional right to access to the court was denied because he was not permitted to request materials from the law library until he paid fees for materials he allegedly damaged.[4] Prisoners' rights to access the court include the right to legal information necessary to permit them to pursue certain claims. Bounds v. Smith, 430 U.S. 817, 828 (1977), overruled in part by Lewis v. Casey, 518 U.S. 343, 351-56 (1996). However, not every deprivation of legal information gives rise to a cognizable claim; rather, the denial of access must be alleged to have caused actual harm to the prison inmate's case. Lewis, 518 U.S. at 354;

---

for its claims. Thus, in carrying out an early review of the amended complaint, the undersigned has referenced Canada's other filings.

[4]Notably, Canada raised an almost identical claim in a prior suit against Warden Ray. The court dismissed that suit in 2006 because Canada admitted he received some law library material and because Canada failed to allege that he had suffered harm as a result of the particular deprivations. Canada v. Ray, No. 7:06cv190, 2006 WL 2709637 (W.D. Va. Sept. 20, 2006).

4

Strickler v. Waters, 989 F.2d 1375, 1383-84 (4th Cir. 1993) (in § 1983 claim, prisoner must allege actual injury or specific harm as a result of denial of access to law library to make a claim); Hause v. Vaught, 993 F.2d 1079, 1084 (4th Cir. 1993) (injury due to alleged denial of access to law library must be shown, cannot be assumed).

Canada's amended complaint alleges no specific harm or injury to one of Canada's legal cases. Canada alleges only a generalized need of legal information to prepare for legal cases. The Fourth Circuit has similarly found such "vague and conclusory" allegations insufficient to meet the specific harm requirement. Strickler, 989 F.2d at 1383 (contention that access to a better law library would have led to an earlier habeas corpus petition and timely responses to other matters speculative and failed to meet specific injury requirement). As such, Canada fails to set out facts suggesting that relief is "plausible" within the meaning of Twombly, 550 U.S. at 570. Accordingly, the undersigned recommends that his claim be dismissed.

*Claim 2*

Second, Canada alleges that he has been subject to excessive fines in contravention of the Eighth Amendment. Specifically, Canada argues that because he is on long-term segregation in prison, he cannot work in prison and thus cannot earn any income. Canada alleges that prisoners in segregation must use money received from friends and relatives to pay prison fines. The prison allegedly levied a $12.00 fine against Canada on July 7, 2007 and a $10.00 fine on June 24, 2007.

As an initial matter, it is far from clear that the Eighth Amendment's admonition that "[e]xcessive bail shall not be required, nor excessive fines imposed" extends to penalties imposed by prison disciplinary committees. Compare Austin v. United States, 509 U.S. 602,

5

610-11 (1993) ("The Cruel and Unusual Punishments Clause is self-evidently concerned with punishment. The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'"), with Waters v. Bass, 304 F. Supp. 2d 802, 808-09 (E.D. Va. 2004) ($1 a day fee owed by prisoners to prison not a punishment from criminal offense and thus not a fine within the meaning of Eighth Amendment). Assuming, without deciding, that Canada's claim properly falls under the Eighth Amendment, the assertion that fines of $10 or $12 are excessive must be dismissed as frivolous. The thrust of Canada's claim is that fines that are disproportionate to a prisoner's ability to pay are excessive. Canada in particular alleges that his terms of confinement deprive him of the ability to earn money in prison jobs. However, courts have routinely upheld much larger fines against prisoners, even though prisoners lack the ability to pay such fines. See, e.g., Tillman v. Lebanon Co. Corr. Facility, 221 F.3d 410, 420-21 (3d Cir. 2000) (concluding as a matter of law that payments due for prison housing not excessive under Eighth Amendment). Particularly on point is Barret v. Williams, No. 06-cv-1045, 2007 WL 1598158 (D. Or. May 30, 2007), where the United States Court for the District of Oregon found that a $200 fine resulting from a prisoner's disciplinary hearing was not excessive, and that the prison officials need not have considered that the prisoner was not presently earning income in making that fine. The fines at issue in this matter are much lower, merely $10 and $12. Thus, they are not excessive under the Eighth Amendment, and accordingly this claim should be dismissed as frivolous.

*Claim 3*

Third, Canada claims that he has been held in long-term segregation for minor infractions, denied access to rehabilitative opportunities, and held to "fill bed space at Red Onion

State Prison to provide jobs for the un-employed [sic] residents of southwest Virginia due to the economical [sic] imbalance to this region in comparison to the other 3-regions." The initial complaint submitted by Canada acknowledges that prison officials say he is in long-term segregation because Canada has a history of assaults, though Canada argues that any infractions are long in the past.

Canada has not alleged changes in his prison conditions that rise to the level of a constitutional violation.[5] "Although the Fourteenth Amendment prohibits a state from depriving a defendant of liberty without due process of law, when the defendant is lawfully convicted and confined to prison, he loses a significant interest in his liberty for the period of his sentence." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Thus:

> changes in a prisoners' [sic] location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges - matters which every prisoner can anticipate are contemplated by his original sentence to prison - are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently.

Id. at 343. A change in prison conditions is constitutionally suspect if it imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Wilkinson v. Austin, 545 U.S. 209, 222-23 (2005) (quoting Sandin v. Conner, 515 U.S. 472, 483 (1995)).

Canada has not alleged that his prison conditions impose an "atypical and significant hardship." Rather, he has merely complained that he is being held in Red Onion State Prison, which Canada characterizes as a supermax facility. Canada's use of the term "supermax" does

---

[5]Like Canada's claim regarding access to the law library, Canada previously challenged his confinement in Red Onion State Prison in 2006. Canada, 2006 WL 2709637, at *6-7. The court dismissed his claim then, for failing to set out any facts alleging an Eighth or Fourteenth Amendment claim. Id. at *6-7. The same logic applies now.

not automatically invoke constitutional protection, as there are a wide variety of conditions of confinement among prisons. Thus, merely being held at Red Onion State Prison, or being held in administrative segregation there, does not raise a constitutional claim. See Johnson v. Kilgore, No. 7:05cv728, 2006 WL 42281 (W.D. Va. Jan. 6, 2006) (dismissing sua sponte claim regarding administrative segregation in supermax prison). Additionally, courts have declined to infer facts from a plaintiff's bare allegations that may suggest atypical conditions of confinement. See Stacey v. Johnson, No. 7:08cv437, 2008 WL 3926369 (W.D. Va. Aug. 27, 2008) (inmate who alleged that he was placed in segregation unit failed to allege onerous conditions setting forth constitutional claim). As such, Canada fails to set out facts showing an atypical and significant hardship and thus fails to make a claim. Accordingly, the undersigned recommends that this claim be dismissed as frivolous.

*Claim 4*

Fourth, Canada claims that his First Amendment rights were violated when he was required to face discipline or take the PPD test, a tuberculosis skin test.[6] Canada alleges that he is Muslim and therefore cannot allow any substance containing alcohol, pork, gelatin or pork by-products to enter his body. He thus is unwilling to take the PPD test, as he believes it contains one of those forbidden products. The prison refuses, Canada further argues, to offer alternative tests that do not violate Canada's religion, such as chest x-rays or a sputum test. Canada claims to have been penalized the loss of ninety days of good time credit for refusing to take the PPD test; Canada views this prison policy as coercive and burdensome on his religion. Construing

---

[6]Canada alleged in the amended complaint that he was forced to take the PPD test; he clarifies in his additional pleadings that he was not physically forced to take the exam, but rather found the threat of losing good time credits coercive.

8

Canada's claim liberally, he raises claims that are not legally frivolous under either the Religious Land Use and Institutionalized Persons Act, "RLUIPA," 42 U.S.C.A. § 2000cc et seq., or the First Amendment.[7]

Under RLUIPA, the state and federal governments are not to substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability. This remains the case, unless the burden is the least restrictive means of reaching a compelling government interest.[8] The undersigned cannot conclude on sua sponte review that Canada's allegations are legally frivolous. Canada has alleged a variety of burdens and that there are alternative tests that the prison could offer that would not violate his, or others', religion.

---

[7]Canada's RLUIPA claim straddles the line between claims properly brought under § 1983 and habeas corpus. RLUIPA claims are generally analyzed under § 1983. See, e.g., Barefoot, 242 F. App'x at 84; Perez v. Frank, 2009 WL 606222 at *11. However, part of the burden to religion alleged by Canada is caused by the prison discipline system, including the loss of good time credits. Prisoners' challenges to disciplinary hearing procedures generally must be brought under habeas corpus. Edwards v. Balisok, 520 U.S. 641, 646-47 (1997) (citing Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)). Additionally, claims for restoration of good time credits must be brought through habeas corpus. See Balisok, 520 U.S. at 643. At least part of Canada's RLUIPA claim is properly raised under § 1983, because he could win civil relief without challenging his loss of good time credits. However, this is a fact dependent analysis. Accordingly, the undersigned recommends that it be considered at a later stage of litigation.

[8]Cases decided under the prior statute, the Religious Freedom Act (RFRA), as well as under Sherbert v. Verner, 374 U.S. 398 (1963), and Wisconsin v. Yoder, 406 U.S. 205 (1972), are relevant to the instant analysis, because RFRA and later RLUIPA restore strict scrutiny to judicial review of certain government incursions on religion. 42 U.S.C.A. § 2000bb(b) (2000) (purpose of RFRA is to "restore the compelling interest test as set forth in Sherbert v. Verner, 374 U.S. 398 (1963) and Wisconsin v. Yoder, 406 U.S. 205 (1972) and to guarantee its application . . . where free exercise of religion is substantially burdened"). As the Fourth Circuit recently noted:

> The Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb et seq., is the precursor statute to RLUIPA, and contained nearly identical language concerning the requirements of a compelling interest and least restrictive means. RLUIPA was enacted under the Spending Clause after RFRA was struck down as applied to the states in City of Boerne v. Flores, 521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997), as an over exercise of Congressional authority under the Fourteenth Amendment. Thus, case law under RFRA remains helpful in analysis of claims under RLUIPA.

McRae v. Johnson, 261 F. App'x 554, 558 n.2 (4th Cir. 2008).

Compare Ballard v. Woodard, 641 F.Supp. 432, 436 (W.D. N.C. 1986) (forced PPD testing not constitutionally suspect) (citing Byrd v. Bennett, 774 F.2d 1154 (4th Cir. 1985) (unpublished table decision)) with Barefoot v. Polk, 242 F. App'x 82, 84 (4th Cir. 2007) (holding claim that individual was "forcibly given" PPD injection in spite of religious beliefs raised non-frivolous § 1983 claim). See also Perez v. Frank, No. 04-C-1181, 2009 WL 606222, at *11 (E.D. Wis. Mar. 9, 2009) (jury question as to whether PPD test is least restrictive means for testing for tuberculosis in light of religious objections). Accordingly, the undersigned recommends that Canada's claim that the prison's policy of PPD testing violates RLUIPA should be served on defendant Ray.

Canada's First Amendment claim as to the PPD test, as well as his other First Amendment claims, are properly analyzed under the Turner factors, which balance an inmate's First Amendment rights against the government's legitimate penological interest. Turner v. Safley, 482 U.S. 78, 89 (1989). The Turner factors require a court to consider:

> is there a " 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"? Second, are there "alternative means of exercising the right that remain open to prison inmates"? Third, what "impact" will "accommodation of the asserted constitutional right ... have on guards and other inmates, and on the allocation of prison resources generally"? And, fourth, are "ready alternatives" for furthering the governmental interest available?

Beard v. Banks, 548 U.S. 521, 529 (2006) (internal citations omitted). In applying the Turner factors, the court must "respect the determinations of prison officials." United States v. Stotts, 925 F.2d 83, 86 (4th Cir. 1991). The plaintiff bears the ultimate burden of establishing that a prison regulation is unconstitutional. See Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1993).

10

Because the RLUIPA claim requires further litigation, the undersigned recommends that the court serve claim four in its entirety on defendant Ray.

*Claim 5*

Canada has further claimed that his First Amendment rights were violated when the magazines "Right On Fall 2006," "December 2006 XXL," "Leviathan" and "Red Heart Warrior Volume 5" were confiscated. In determining whether an inmate's First Amendment right to "receive information and ideas" has been violated, the court is to apply the Turner factors. 482 U.S. at 89; Hause, 993 F.2d at 1082.[9] "Turner requires prison authorities to show more than a formalistic logical connection between a regulation and a penological objective." Beard v. Banks, 548 U.S. 521, 535 (2006) (weighing government's interest in incentivizing inmate improvement against deprivation of all periodicals).

In compliance with the court's order, Canada has submitted additional material, explaining why he believes the publications were wrongfully withheld. He has also submitted documents created by the Virginia Department of Corrections from the Inmate Grievance Process.[10] These documents set forth the Virginia Department of Correction's rationale for withholding the challenged publications, noting that collectively they violate Division Operating Procedure ("DOP") sections 852-7.8(7), (12)-(14) as well as 803.2(3) and (13). These DOP provisions prohibit publications that solicit or promote sexual activities in violation of state or

---

[9]Hause concerns a challenge by a pre-trial detainee. However, the Supreme Court has held that challenges by both pre-trial detainees and detainees are determined under the Turner factors. Hause, 993 F.2d at 1082 (citing Bell v. Wolfish, 441 U.S. 545, 546 n.28 (1979)).

[10]Canada has not submitted the information required by the court concerning the publication "Leviathan." Accordingly, the undersigned recommends that Canada's claim regarding the publication Leviathan be dismissed for failure to state a claim. Canada has submitted information regarding two other publications, "Sister 2 Sister" and "King". Because Canada's claims regarding those publications fall in line with the claims raised in his amended complaint, they are included in the above analysis.

11

federal law, while also prohibiting what Canada calls "security threat group materials." Such materials depict gang paraphernalia, violence, insurrection, weapons or material that are detrimental to the prison's security and good order. The documents attached by Canada as Exhibit 3 to Docket # 41 demonstrate that the prison made an individualized review of each issue withheld, notified Canada of the withholding, and permitted him to challenge the withholding through a grievance process. Canada, who has not reviewed the documents, argues that the prison's analysis is wrong and that the documents merely promote Africa-American or Native American culture. As explained more fully below, Canada's claim is frivolous because prisons may withhold materials when they determine that the materials "pose[] threats to personal or institutional safety and security; or that they pose a threat to the security, discipline, and good order of the facility . . . ." Roberts v. O'Brien, No. 7:08cv000372, 2008 WL 2660772 *1 n.3 (W.D. Va. Jul. 7, 2008) (dismissing sua sponte alleged First Amendment violation where prison withheld newspapers and photographs).

Applying the Turner factors, the procedures at issue are reasonably related to the prison's legitimate penological interest in protecting the order of the prison and are important for the safety and welfare of the prison staff and prisoners. As in Roberts, material that advocates violence, provides fodder for gang identification, or incites or encourages violence and insurrection, naturally puts the prison's order at risk. Similarly, prison officials have a legitimate penological interest in the enforcement of state and federal laws. Thus, it is also reasonable for the prison to prohibit materials that solicit or promote sex in violation of the law. Canada has alternative means of obtaining information about African-American and Native American culture. He is free to receive publications that do not violate encourage insurrection or violence.

Similarly, Canada may receive other publications that do not encourage or solicit illegal sex. Accommodating Canada's request could negatively impact the safety of prison workers, as well as other inmates and Canada himself. There is no ready alternative to screening Canada's publications. The prison gave Canada an opportunity to contest the screening of the materials, and the materials went before a review board, as evidenced by the grievance responses to Canada's own filing. Accordingly, he has received process and prison officials did not violate Canada's First Amendment rights when they withheld the selected publications. Roberts, No. 2008 WL 2660772 at * 1 n.3. Therefore, the undersigned recommends that Canada's claim five be dismissed.

*Claim 6*

Sixth, Canada claims that his constitutional rights were violated by prison officials when they denied him access to nude and or semi-nude photos of his "friends, girlfriends or wives." According to Canada's allegations, the prison banned receipt of those photos because such photos were a threat to security. The policy, Canada argues, is illogical because he claims he is permitted to receive commercial nude photographs. Additionally, Canada urges that he is denied sexual pleasure and emotional support by being refused those photos.

This district recently considered, and found legally frivolous, a similar challenge to the Virginia Department of Correction's policy banning commercial nude photos in Torres v. Johnson, No. 7:07cv398, 2007 WL 2570217 (W.D. Va. Aug. 31, 2007), appeal dismissed, 278 F. App'x 288 (4th Cir. 2008). The plaintiff complained that he was barred from receiving certain commercial photos of nude women. Id. at *1. Analyzing the ban on commercial and personal nude and semi-nude photographs under the Turner factors, the court found that the Virginia

13

Department of Corrections possesses a "legitimate interest in maintaining security, discipline, and order in its prisons." Id. at *3. "Penological interests are negatively impacted by sexually explicit publications that promote the commission of criminal activity, such as the bartering of photographs." Id. at *3. In addressing the third Turner factor, the court noted that allowing photographs would invite disruptive behavior. Id. at *3. Finally, bearing the security concerns at issue in mind, the Torres court concluded that the policy is not an "exaggerated response" to the problems at hand. Id. at *3 (citations omitted). The reasoning in Torres is equally applicable to this matter. The prison has a legitimate interest in keeping order, which may be negatively impacted by prisoners' possession of naked pictures of wives or girlfriends. In upholding a similar regulation, the Second Circuit validated government concerns that: "(1) an inmate who knows a fellow inmate or guard has seen the photographs without permission may become violent; and (2) insults - intended or perceived - from inmates who see the photographs (even with permission) may lead to violence." Giano v. Senkowski, 54 F.3d 1050, 1054 (2d Cir. 1995) (collecting cases). Accordingly, the undersigned recommends that Canada's claim regarding naked pictures of his wife or girlfriend be dismissed as legally frivolous.

Finally, because Canada is not entitled to relief for any of his allegations in claims one through three, five and six, the undersigned additionally recommends that his related claims for declaratory relief be dismissed.

## IV.

In conclusion, the undersigned **RECOMMENDS** that this action be **DISMISSED** as to claims one through three, five and six. The undersigned recommends that claim four be **SERVED** upon defendant Ray. The Clerk is directed to transmit the record in this case to

14

Honorable Samuel G. Wilson, United States District Judge. Plaintiff is reminded that pursuant to Rule 72(b), he is entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is directed to send copies of this Report and Recommendation to plaintiff.

It is **SO ORDERED**.

Enter this 19th day of January, 2010.

Michael F. Urbanski
United States Magistrate Judge