CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 09 2011

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KELVIN A. CANADA, | ) |
| | ) Civil Action No. 7:08-cv-00219 |
| Plaintiff, | ) |
| | ) |
| v. | ) MEMORANDUM OPINION |
| | ) |
| TRACY RAY, | ) |
| | ) By: Samuel G. Wilson |
| Defendant. | ) United States District Judge |

This is an action pursuant to 42 U.S.C. § 1983 by plaintiff, Kelvin A. Canada ("Canada"), an inmate at Red Onion State Prison ("Red Onion") proceeding *pro se*, against the warden at that institution Tracy Ray ("Ray") alleging that Ray: (1) violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq.*, and the First Amendment by punishing him for refusing a tuberculosis test requiring the injection of phenol; (2) violated his First Amendment rights by not permitting him to receive selected issues from certain publications; and (3) violated his First Amendment rights by denying him access to nude or semi-nude photographs pursuant to the Virginia Department of Corrections' ("VDOC") policy that prohibits inmates from possessing nude photographs of their "friends, girlfriends, or wives." This matter is currently before the court on Ray's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons that follow, the court grants Ray's motion for summary judgment as to each of these three claims.

I.

Canada originally brought this case alleging a multitude of "diverse and unrelated" claims against seventeen defendants. Canada v. Ray, 2009 WL 2448557, at *1 (W.D. Va. Aug. 10, 2009). The Magistrate Judge notified Canada that his initial complaint failed to comply with

Rules 18 and 20 of the Federal Rules of Civil Procedure, and gave Canada an opportunity to amend. Canada responded that he had "decided to sue" Ray, cryptically listing six claims.[1] Canada claimed that Ray had violated his federal rights by: denying him the ability to order materials from the law library; subjecting him to excessive fines; keeping him in long term segregation for minor infractions; requiring that he take a tuberculosis test that allegedly involved the injection of a substance containing alcohol in violation of his religion; rejecting certain publications; and denying him certain photographs pursuant to a VDOC policy that prohibits inmates from possessing nude and semi-nude photographs of their friends, girlfriends, or wives.

The Magistrate Judge issued a report recommending that the court dismiss as frivolous under 28 U.S.C. § 1915 all the claims except Canada's claim that the tuberculosis testing violated Canada's rights under the First Amendment. Canada v. Ray, 2010 WL 297818, at *1 (W.D. Va. Jan. 19, 2010). The court adopted the report in part and rejected in part. The court agreed with the report's finding that the court needed additional information before deciding Canada's tuberculosis testing claim. However, it also found that it needed additional information as to Canada's rejected publications and prohibited photographs claims. In accordance with the Magistrate Judge's recommendation, the court dismissed the remaining claims as frivolous. Canada v. Ray, 2010 WL 2179062, at *1-3 (W.D. Va. May 28, 2010). Accordingly, the case proceeded as to the tuberculosis testing, rejected publications, and prohibited photographs claims, which Canada styled as First Amendment claims.

---

[1] The court construed the omission of the other sixteen previously named defendants as a motion to voluntarily dismiss the claims against them, and granted that motion.

Ray moved for summary judgment on Canada's remaining three claims with supporting affidavits and documents. In responding to that motion, Canada asserted a new claim that the tuberculosis testing violated not only his First Amendment rights, but also his rights under RLUIPA. The court permitted Canada to add his RLUIPA claim and directed Ray to respond further. Having received Ray's additional response and Canada's reply, the court finds that the entire case is ripe for decision.

## Tuberculosis Testing

The VDOC requires each inmate to submit to an annual tuberculosis screening test involving a purified protein derivative ("PPD") injection or face disciplinary action and the loss of accrued good time credit. The VDOC finds the PPD test more beneficial than other tests because it can detect both active and inactive forms of tuberculosis, and is relatively inexpensive. Canada, a Muslim, refused the test on the ground that the PPD solution consists of 0.28% phenol. Canada alleges that phenol is an "alcohol derivative," and that the Muslim dietary guidelines to which he adheres do not permit the ingestion of alcohol. (See Pl.'s Resp. in Opp'n Ex. A (ECF No. 61) ("Muslims are forbidden to consume . . . all intoxicating drugs, liquors, or any food that is mixed with alcohol and/or any harmful drugs.").) Canada has offered instead to submit to a sputum test or an x-ray. These tests do not involve the injection of the PPD solution, but are expensive and only capable of detecting active tuberculosis.

Canada filed a grievance with Ray regarding the testing, reiterating his position that it violated his religion to ingest the phenol in the PPD solution. In response, Ray found that Canada's grievance was unfounded because: phenol and alcohol are not the same chemical substances; the PPD test was capable of detecting both active and inactive tuberculosis; and the

sputum and x-ray tests were more expensive. Canada appealed Ray's decision to the VDOC's Health Services Director, who affirmed Ray's decision on the same grounds.

In Canada's response to Ray's motion for summary judgment, Canada supports his contention that alcohol and phenol are equivalents with an exhibit copied from an unknown source that states that "[p]henols are similar to alcohols." (Pl.'s Resp. in Opp'n Ex. 1 (ECF No. 65).) Though Ray does not dispute that phenol shares some similarities with alcohol, he cites an affidavit submitted by Dr. Scott Gronert, the Chairman of the Chemistry Department at Virginia Commonwealth University, stating that phenol does not constitute alcohol under the definition promulgated by the International Union of Pure and Applied Chemists.[2] (Gronert Aff. ¶ 4.) Further, Dr. Gronert states that "alcohol", in layman's terms, is actually ethyl alcohol, which does not share the same chemical composition as phenol. (Id.) Canada has not disputed Dr. Gronert's analysis. Nonetheless, Canada argues that the policy violates his rights under the First Amendment and RLUIPA.

### Rejected Publications

VDOC Operating Procedure 803.2 ("OP 803.2") governs the receipt of publications in Virginia's prisons. OP 803.2 requires the warden or his designee review all inmate requests to order publications. (See Jennings Aff. Ex. A at 3.) Once the order is approved, the warden or his designee is again assigned the responsibility of reviewing the publication on arrival to see if

---

[2] Dr. Gronert's affidavit states:
> The International Union of Pure and Applied Chemists defines an alcohol as a compound in which a hydroxyl group, -OH, is attached to a saturated carbon atom $R_3COH$. . . . Phenol does not fit this definition because the hydroxy group is attached to an unsaturated carbon. Phenol has distinctly different properties than alcohols. The common feature between alcohols and phenols, the hydroxyl group, is widely distributed in organic compounds and found in all proteins and carbohydrates.

(Gronert Aff. ¶ 4.)

the publication "can be reasonably documented to contain" restricted material. (Id. at 5.) OP 803.2(L) details specific criteria the reviewing official is to apply. (Id.)

If it is initially determined that a publication may reasonably be found to contain restricted material, the reviewing official notifies the inmate and forwards the publication to the Publication Review Committee ("PRC") for further evaluation. (Jennings Aff. Ex. A at 4.) The VDOC's Deputy Director of Operations appoints the members of the PRC, which meets regularly to review publications sent from prisons around the state. (Id. at 1, 4.) The PRC makes the ultimate decision as to whether submitted publications violate one or more of the criteria set forth in OP 803.2(L). (Id.) If the PRC decides that a publication contains restricted material, the PRC identifies specific policy the publication has violated, and the PRC returns the publication to the originating prison. (Jennings Aff. Ex. A at 4.) The local institution then notifies the inmate of the PRC's decision, and affords him the opportunity to file a grievance. (Id. at 5.) The inmate has the option of forwarding the restricted publication to an address outside the prison or having prison officials destroy it. (Jennings Aff. ¶ 5; Def.'s Mot. at 7.) The prison does not retain a copy of the restricted publication.

An inmate wishing to challenge the PRC's decision must file a grievance with the prison's warden within seven days of receiving notice of that decision. (Jennings Aff. Ex. A at 5.) The warden is responsible for responding to this initial grievance. If the warden denies the grievance, the inmate may appeal the warden's decision to the VDOC's Deputy Director of Operations.[3]

Canada was denied the following publications: Volume 5, issue number 1 of *The Red Heart Warrior* newsletter; the Fall 2006 issue of *Right On* magazine; the November 2007 issue

---

[3] In fact, the inmate must do so in order to fully exhaust his administrative remedies.

of *XXL* magazine; and Volume 7, issue number 29 of *Don Diva* magazine.[4] In each case, the PRC found that the publications contained material restricted by OP 803.2(L). The PRC made the following findings: the issue of *Red Heart Warrior* violated OP 803.2(L)(7), which restricts "[m]aterial that promotes or advocates violence, disorder, insurrection or terrorist activities against individuals, groups, organizations, the government, or any of its institutions;" the issue of *Right On* violated OP 803.2(L)(7), as well as OP 803.2(L)(12) & (14), which restrict "[m]aterial whose content could be detrimental to the security, good order, discipline of the facility, or offender rehabilitative efforts or the safety or health of offenders, staff, or others," and "[m]aterial, documents or photographs that depict, describe or suggest the use of violence, weapons, illegal drugs, or other activities that counter the state goal of rehabilitation within the DOC"; the issue of *Don Diva* violated both OP 803.2(L)(12) & (13), the latter of which restricts "[m]aterial that depicts, describes, or promotes gang signs, language, clothing, jewelry, codes or paraphernalia, gang participation, or other gang-related activity or association;" and the November 2007 issue of *XXL* also violated OP 803.2(L)(13).

Canada filed grievances regarding the PRC's decision in all four instances. Because Ray had designated a deputy to handle the initial review process and because he was not a member of the PRC, Ray's initial review of this grievance was his first personal involvement in Canada's dispute over each challenged publication. In each instance, Ray found Canada's grievance to be without merit, and the VDOC's Deputy Director of Operations affirmed each decision.

---

[4] Canada's amended complaint also alleges that prison officials impermissibly confiscated a copy of the *Leviathan* newsletter. However, in response to Ray's motion for summary judgment, Canada conceded that he did not exhaust his administrative remedies as to this publication, and withdrew this claim accordingly. (Pl.'s Resp. 5 (ECF No. 61).)

**Prohibited Photographs**

Canada also seeks to possess nude or semi-nude photographs of his friends, girlfriends, or wife. VDOC Operating Procedure 803.1 ("OP 803.1") bans the possession of "nude or semi-nude personal pictures . . . or personal photographs" by inmates. (Ray Aff. Ex. A at 5.) Canada argues that this policy is irrational and arbitrary given the VDOC's disparate treatment of commercially produced nude or semi-nude photographs.

## II.

Canada claims that by forcing him to choose between receiving an injection of a substance that has been banned by his religion or accepting sanctions, Ray violated his rights under RLUIPA and the First Amendment. However, because Canada has not shown that there is a genuine dispute of material fact as to whether submitting to the PPD tuberculosis test constitutes an actual burden on his exercise of religion, the court grants Ray's motion for summary judgment.[5]

RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that the imposition of the burden on that person is . . . (1) in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that governmental interest.

42 U.S.C. § 2000cc-1(a); see also Lovelace v. Lee, 472 F.3d 174, 185 (4th Cir. 2006). "[A] substantial burden on religious exercise occurs when a state or local government . . . 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Lovelace,

---

[5] Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment bears the burden of informing the court of the basis for its motion, and identifying those parts of the record which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reviewing a summary judgment motion under Rule 56, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

472 F.3d at 187 (quoting Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1981)).

Canada has marshaled nothing to support his claim that the injection of the PPD solution containing phenol violates his religious principles. Initially, Canada claimed that phenol is an alcohol. Canada later cites an exhibit which states that "[p]henols are *similar to* alcohols." (Pl.'s Resp. in Opp'n Ex. 1 (ECF No. 65) (emphasis added).) The religious guidelines Canada cites prohibit the consumption of "intoxicating drugs, liquors or any food that is mixed with alcohol . . . ." (Pl.'s Resp. in Opp'n Ex. A (ECF No. 61).) The restrictions say nothing about substances that share some of the same chemical elements as alcohol, or even "alcohol derivatives."[6] Further, Canada provides no evidence contesting or refuting the declaration of Dr. Gronert, who states that phenol is not alcohol. (Gronert Aff. ¶ 4.) Given that none of Canada's submissions support his factual claim that receiving an injection of a substance containing phenol would violate his religious principles, the court finds that Canada has not met his burden of showing that the testing constitutes a substantial burden on the exercise of his religion in violation

---

[6] In contrast, those guidelines specifically forbid pork and all "pork by-products, and pork derivatives." (Pl.'s Resp. in Opp'n Ex. A (Dkt. # 61)); see also Perez v. Frank, 2009 WL 606222, at *10 (E.D. Wis. Mar. 9, 2009) (denying a prison official summary judgment on the ground that a reasonable fact finder could find that the tuberculosis test in question there contained a pork derivative, which would have substantially burdened the plaintiff's free exercise of his religion).

RLUIPA and the First Amendment.[7] Accordingly, the court grants Ray's motion for summary judgment as to this claim.[8]

## III.

Canada argues that Ray denied him access to four issues of various publications in violation of Canada's right to free speech under the First Amendment. Canada asserts that the publications in question did not contain material that posed a threat to prison safety or security, and that the PRC acted arbitrarily in denying Canada these magazines. However, the court finds that Canada's allegations alone are insufficient to create a genuine dispute of material fact on this point. Accordingly, the court grants Ray's motion for summary judgment on the claim.

Canada does not challenge the constitutionality of VDOC policies designed to ban publications found to be detrimental to institutional security, order and discipline or the regulatory procedures adopted to implement those policies. However, Canada does argue that these policies are unconstitutional as applied to the publications he seeks to possess, and that Ray wrongly decided his related grievances. To defend against such a challenge, prison officials do not need to demonstrate that their decision was indisputably correct; they need only show that their decision was rational. In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 470 (4th Cir. 1999); Cline v. Fox, 266 F. Supp. 2d 489, 496 (N.D. W. Va. 2003). The rigorous, least restrictive scrutiny ordinarily applicable to speech is "simply . . .

---

[7] Though the court has decided the claim on the ground that requiring Canada to submit to the PPD test does not violate RLUIPA because it does not substantially burden the exercise of his religion, the court also notes that it should not "read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety." Cutter v. Wilkinson, 544 U.S. 709, 722 (2005). Tuberculosis testing unquestionably implicates important concerns regarding the safety of both inmates and prisoners, and absent compelling countervailing evidence, courts should defer to the determinations of prison administrators concerning the efficacy and practicality of the particular test they have selected.

[8] For the same reasons that Canada has not shown that the testing policy imposes a substantial burden on the exercise of his religion for RLUIPA purposes, the testing policy does not interfere with his right to freely exercise his religion within the meaning of the First Amendment. See Thomas, 450 U.S. at 718 (applying the substantial burden test in the context of a Free Exercise Clause claim).

not appropriate for consideration of regulations that are centrally concerned with the maintenance of order and security within prisons." Thornburgh v. Abbott, 490 U.S. 401, 409-10 (1989). Rather, "the relevant inquiry is whether the actions of prison officials were 'reasonably related to legitimate penological interest.'" Id. (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). Courts allow prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979). Courts must be mindful of the "'inordinately difficult undertaking' that is modern prison administration.'" Thornburgh, 490 U.S. at 407 (quoting Turner, 482 U.S. at 85).

Here, there is no indication or allegation that members of the PRC failed to follow the VDOC's procedures for reviewing the publications. The PRC found that each of the rejected publications failed to pass scrutiny under the restrictions set forth in OP 803.2(L). See Part I. The PRC's findings provided legitimate, permissible reasons for Ray's decision to deny Canada's grievance. As Ray has met his burden of production on this issue, it falls upon Canada to demonstrate the existence of evidence upon which a jury could reasonably find in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Yet, Canada has failed to set forth any facts that would call into question the legitimacy of Ray's actions in ruling on Canada's grievance. Instead, Canada offers only his personal belief that the VDOC officials acted impermissibly in applying the regulations to the publications, despite the fact that once the PRC completed its review Canada was given a choice as to whether to have the publications destroyed or forwarded to an outside address of his choice and preserved as evidence. In short, having controlled the disposition of the rejected

publications, Canada cannot now create a triable issue of fact that their contents did not implicate legitimate prison concerns by simply setting forth his opinions as to their contents.[9] See Faust v. Parke, 1997 WL 284598, at *1 (7th Cir. May 22, 1997). Therefore, the court finds that it should grant Ray's motion for summary judgment. See George v. Smith, 507 F.3d 605, 608 (7th Cir. 2007) (summary judgment denying an inmate's as applied challenge appropriate when the inmate who controlled disposition of banned publications failed to provide the court with details as to the banned publication's contents .)

Because Canada has not set forth facts creating a genuine dispute that Ray violated his First Amendment rights by initially denying his grievances of the PRC's rejection of the publications in question, the court grants Ray's motion for summary judgment on the claim.[10]

---

[9] Before Ray moved for summary judgment, or even answered, Canada moved for Ray to produce the disputed publications. The Magistrate Judge denied the motion as premature but expressly noted that his ruling was "without prejudice." Canada did not renew his discovery motion after Ray answered and moved for summary judgment, nor did he contest Ray's assertion that pursuant to VDOC policy, inmates are permitted to decide whether to destroy rejected publications or have them forwarded to someone outside the prison.

[10] The court notes that only persons who cause or participate in the violation of a plaintiff's federal rights can be held liable under § 1983. George, 507 F.3d at 609. Here, Ray did not participate in the initial screening of the publications when the prison received them or make the decision to forward them to the PRC for further review, and the PRC made the ultimate decision regarding whether the publications violated the applicable prison regulations. Ray's only involvement in the whole process was to review Canada's initial grievances. Ordinarily, a "ruling against a prisoner on an administrative complaint does not cause or contribute to [a] violation" for purposes of § 1983. Id.; see also Jeffers v. Gomez, 267 F.3d 895, 916 (9th Cir. 2001); Dicks v. Thomas, 2006 WL 1875922, at *6 (D.S.C. July 5, 2006). However, the Court finds it unnecessary to decide here whether the intersection of Ray's role as warden and his responsibility to hear the initial grievance would be sufficient personal involvement for the imposition of liability under § 1983.

The court also notes that even if Ray incorrectly decided Canada's grievance, because the prison no longer has possession of the rejected publications, Canada would not be entitled to injunctive relief. Moreover, Ray has asserted qualified immunity and would be liable for damages only if he violated clearly established federal law of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Ray would not be liable for damages simply for making a wrong call. Public officials are not liable for making "bad guesses in gray areas," Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992), and there are appreciably fewer analytical bright lines in the prison context where the law gives prison officials some latitude, and the decision-making process permits the balancing of various interests. See Benson v. Allpphin, 786 F.2d 268, 276 (7th Cir. 1986) (noting that a constitutional rule that "involves the balancing of competing interests" is "so fact dependent that the 'law' can rarely be considered 'clearly established.'"); see also Borucki v. Ryan, 827 F.2d 836, 848 (1st Cir. 1987) ("[W]hen the law requires a balancing of competing interests . . . it may be unfair to charge an official with knowledge of the law in absence of a previously decided case with clearly analogous facts."); Myers v. Morris, 810 F.2d 1437, 1462 (8th Cir. 1987) ("[I]f the existence of a right or the degree of protection it warrants in a particular

11

# IV.

Canada also argues that the VDOC policy of denying inmates access to nude or semi-nude photographs of inmates' "friends, girlfriends, or wives," while permitting commercially produced nude or semi-nude photographs, is unreasonable and violates the First Amendment. The court disagrees, and finds that the policy is reasonably related to legitimate penological interests and is thus permissible under the First Amendment.

In evaluating constitutional challenges to prison regulations, including those regulations that implicate an inmate's First Amendment rights, courts examine four factors: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) whether "alternative means of exercising the right" remain open to the prison inmates; (3) the impact that an accommodation of the asserted constitutional right will have on "guards, other inmates, and the allocation of prison resources generally;" and (4) the "absence of ready alternatives" available to prison administrators. Turner v. Safley, 482 U.S. at 89-91 (internal quotation marks omitted) (applying these factors to an inmate's First Amendment challenge). The plaintiff bears the burden of establishing that a prison regulation is unconstitutional. Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1993); see also Torres v. Johnson, 2007 WL 2570217, at *3 (W.D. Va. Aug. 31, 2007) (applying the Turner factors to a prison regulation prohibiting the possession of nude or semi-nude personal photographs).

The VDOC policy in question, Operating Procedure 803.1, is a statewide policy that applies to both commercial and amateur photographs and is designed to prohibit inmates from possessing personal photographs because they have the potential to cause conflict. Canada

---

context is subject to a balancing test, the right can rarely be considered 'clearly established,' at least in the absence of closely corresponding factual and legal precedent."), abrogated on other grounds by Burns v. Reed, 500 U.S. 478 (1991).

claims that it is irrational to distinguish between impersonal, commercial photographs and intimate personal photographs. The court finds otherwise. The court finds it axiomatic that the possession of intimate photographs of friends, girlfriends, or wives has a greater potential to lead to tension and conflict because of the emotional attachments that they represent than the possession of impersonal, commercial photographs, and, therefore, that banning intimate personal photographs is rationally related to controlling conflict. See, e.g., Unger v. United States, 1997 WL 124332 (9th Cir. Mar. 18, 1997) (upholding a similar restriction on personal photographs); see also Giano v. Senkowski, 54 F.3d 1050, 1052-54 (2d Cir. 1995) (same). The fact that Canada believes a more narrowly tailored restriction on the possession of photographs would accomplish the same purposes is irrelevant to the court's analysis; Turner only requires that the regulation in question be rationally related to the prison's legitimate interests. Turner, 482 U.S. at 89.

For the reasons stated above, the court grants Ray's motion for summary judgment on Canada's First Amendment claim relating the possession of personal, intimate photographs of the sort the VDOC prohibits.

V.

For the reasons stated above, the court grants Ray's motion for summary judgment on all of Canada's claims.

**ENTER:** February 9, 2011.

UNITED STATES DISTRICT JUDGE

13